IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RODNEY E. BURDESHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 1:07-CV-283-WHA |
| | ) | |
| SARA LEE CORP., et al., | ) | (WO) |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

This cause is before the court on a Motion to Remand (Doc. #14) which was filed by the

Plaintiff, Rodney E. Burdeshaw, on April 26, 2007.  The Plaintiff originally filed a Complaint in

the Circuit Court of Houston County, Alabama on February 22, 2007, stating the following

claims: (1) failure to pay temporary benefits or permanent disability benefits as required by the

workers' compensation laws of the State of Alabama (Count One); (2) retaliatory discharge in

response to filing a worker's compensation claim (Count Two); (3) negligence and/or

wantonness in regard to maintaining a reasonably safe working environment, specifically against

Defendant Johnny Elmore (Count Three); (4) breach of contract in regard to disability insurance

(Count Four); (5) fraud and misrepresentation in regard to coverage of disability insurance

(Count Five); and (6) failure to pay benefits under disability insurance (Count Six).  The

Defendants, Sara Lee Corp.,[1] Johnny Elmore and Aetna Life Insurance Company, filed a Notice

---

[1] According to the Notice of Removal, the correct name of this Defendant is Sara Lee
Bakery Group, Inc., not Sara Lee Corp.  Because all previous filings use the incorrect name, the
court will continue to refer to this Defendant as Sara Lee Corp. to avoid confusion.  The court
does note, however, that Defendant Sara Lee Corp. is alleged to actually be Sara Lee Bakery

of Removal on April 3, 2007 in this court stating that this court has original jurisdiction over certain claims under §502(e) of the Employment Retirement Income and Security Act ("ERISA"), 29 U.S.C. §301 *et seq*., and 28 U.S.C. §1331, which may be removed to this court under 28 U.S.C. §1441.  The Plaintiff subsequently filed a Motion to Remand, contending that the Defendants have not met the burden requisite for removing the claims to this court under the aforementioned statutes.

For reasons to be discussed, the Motion to Remand is due to be GRANTED, in part, and DENIED, in part.

## II.  FACTS

On or about May 28, 2006, while employed by Defendant Sara Lee Corp. ("Sara Lee") and under the supervision of Defendant Johnny Elmore ("Elmore"), the Plaintiff, Rodney E. Burdeshaw ("Burdeshaw"), was involved in a workplace accident.  Burdeshaw claims that the negligent supervision of Elmore caused the accident.  As a result of this accident, Burdeshaw suffered injuries requiring medical treatment.  Burdeshaw alleges that he now experiences a total disability, which is expected to become a permanent disability.  Subsequent to this incident, Sara Lee terminated Burdeshaw, who alleges that he was terminated in retaliation for filing a worker's compensation claim.

Additionally, Burdeshaw claims that he had disability insurance offered by Sara Lee and underwritten and issued through Defendant Aetna Life Insurance Company ("Aetna").  Burdeshaw alleges coverage under two plans, the Sara Lee Corporation Group Insurance Plan and the Sara Lee Corporation Long-Term Disability Plan.  The Sara Lee Corporation Group

---

Group, Inc.

2

Insurance Plan ("Group Plan") offers the following types of coverage: (1) Basic, Optional and Dependent Life Insurance, and (2) Basic and Optional Accidental Death and Dismemberment Insurance.   The Sara Lee Corporation Long-Term Disability Plan ("Disability Plan") provides long term disability coverage to Sara Lee employees who purchase this coverage.  The employees alone are responsible for the monthly premium for this long-term disability coverage. According to Burdeshaw, although his premiums were current with both plans at the time of the accident, he has failed to receive the benefits due to him under this coverage.

As noted above, the Defendants have removed the case to this court, alleging that the court has original jurisdiction for certain claims under §502(e) of ERISA, specifically Counts Four, Five and Six.  The remaining Counts are removed concurrently under the doctrine of supplemental jurisdiction.

## III. <u>REMAND STANDARD</u>

Federal courts are courts of limited jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Executive Committee*, 719 F.2d 1072, 1076 (11th Cir. 1983), *cert. denied*, 465 U.S. 1103 (1984).  As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States.  *See Kokkonen*, 511 U.S. at 377.  Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.  *See Burns*, 31 F.3d at 1095.

## IV. <u>DISCUSSION</u>

Although there are six Counts in the Plaintiff's Complaint, these Counts can be

subdivided into three general groups: (1) the claims alleged to be ERISA claims (Counts Four, Five and Six), (2) the negligence/wantonness claim (Count Three), and (3) the workers' compensation claims (Counts One and Two). The court will address each of these general groups separately, as each group requires a distinct analysis.

### I. *The Claims Alleged to be ERISA Claims*

Removal of a case to federal court is proper only if the case originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). In this case, the Defendants argue that removal was proper because the court has federal question jurisdiction over Counts Four, Five and Six, which are governed by ERISA according to the Defendants. Federal question jurisdiction requires that the action arise under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. In deciding whether a federal question exists, the court must apply the well-pleaded complaint rule whereby the court looks to the face of the complaint, rather than to any defenses asserted by the defendant. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Consequently, the general rule is that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption. *See Caterpillar*, 482 U.S. at 393.

There are, however, exceptions to the well-pleaded complaint rule. One exception is known as the "complete preemption" (or, alternatively, the "superpreemption") doctrine.[2] *Id.* This exception is recognized in the rare instance that Congress so "completely pre-empts a particular area that any civil complaint . . . is necessarily federal in character." *Metropolitan Life*

---

[2] It should be noted that the Eleventh Circuit commonly uses both the "complete preemption" and "superpreemption" terminology. These terms are interchangeable.

*Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987). The inquiry for complete preemption is jurisdictional in nature and focuses on whether Congress intended to make the plaintiff's cause of action federal and removable despite the fact that the plaintiff's complaint only pleads state law claims. *Whitman v. Raley's Inc.*, 886 F.2d 1177, 1181 (9th Cir. 1989); *see also Evrast v. Flexible Products Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003) (finding that the determination of whether complete preemption applies is a jurisdictional issue).

The Supreme Court has determined that the uniform regulatory scheme established by ERISA is one area in which Congress intended to provide for complete preemption. *Metropolitan Life Ins. Co.*, 481 U.S. at 64-67. The Eleventh Circuit has set out four elements for finding complete preemption under ERISA: (1) there must be a relevant ERISA plan; (2) the plaintiff must have standing to sue under that plan; (3) the defendant must be an ERISA entity; and (4) the complaint must seek compensatory relief akin to that available under §1132(a), which is normally akin to a claim for benefits due under a plan. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999).

The primary element of the above analysis relevant to the present case is whether the Sara Lee insurance plans qualify as ERISA plans. If the court finds that an ERISA plan does exist in this case, Burdeshaw, as an intended beneficiary of the disability benefits, has standing to assert a variety of claims under 29 U.S.C. §1132(a). *See Butero*, 174 F.3d at 1212-13. Moreover, if the court finds that an ERISA plan exists, both Sara Lee and Aetna, as the offeror/plan administrator and issuer/underwriter of the plans, respectively, qualify as ERISA

entities.[3]  *See id* at 1213.  Finally,  Counts Four, Five and Six allege breach of contract, fraud and failure to pay benefits under the Sara Lee insurance plans.  Essentially, each of these claims seek "to recover benefits due to [the beneficiary] under the terms of the plan."  *See id.* (citing 29 U.S.C. §1132(a)(1)(B)).  Therefore, whether ERISA's "complete preemption" applies to Counts Four, Five and Six hinges principally on the determination that the Sara Lee insurance plans qualify as ERISA plans.

ERISA recognizes two types of plans, "employee welfare benefit plans" and "employee pension benefit plans."  *Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991) (citing 29 U.S.C. §1002(1)).  If the Sara Lee insurance plans qualify as ERISA plans, they will do so as "employee welfare benefit plans," not "employee welfare pension plans," so the court will focus its discussion on the former.[4]  ERISA provides a definition for what should be deemed an "employee welfare benefit plan" or "welfare plan."  *See* 29 U.S.C. §1002(1).  As interpreted by the Eleventh Circuit,

> a welfare plan requires (1) a "plan, fund, or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

*Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (*en banc*); *see also Anderson v.*

---

[3] It should be noted that only Count Three states an actionable claim against Defendant Elmore.  Thus, for Counts Four, Five and Six to qualify as ERISA claims, the court is not required to determine Elmore's status as either an ERISA entity or a non-ERISA entity.

[4] Under the definition provided by ERISA, an "employee welfare pension plan" provides retirement income to employees or results in a deferral of income by employees extending to the termination of covered employment or beyond.  *See* 29 U.S.C. §1002(2).  Considering the facts of this case, this type of plan clearly is not involved.

*UNUM Provident Corp.*, 369 F.3d 1257, 1263 (11th Cir. 2004).

The Defendants argue that the Sara Lee insurance plans clearly fall within ERISA's definition of an "employee welfare benefit plan" because they are insurance plans maintained by Sara Lee providing a number of benefits, including accident, disability and death benefits, to employee participants or their beneficiaries.  The Plaintiff concedes that the plans at issue in this case "clearly meet the definition of 'welfare plans' under ERISA."  *Plaintiff's Response to Defendant's Opposition to Plaintiff's Motion to Remand*, Doc. 17, p. 5.  The court concurs with the parties' assessment that these plans fall within the definition of a "welfare plan" under ERISA and, therefore, will proceed without further discussion.

Even though these Plans fall under the ERISA definition of a "welfare plan," the court's inquiry does not end.  The Plaintiff argues that the Sara Lee insurance plans should not be deemed ERISA plans because they fall within the scope of the regulatory "safe harbor" provision set forth by the Department of Labor.  *See* 29 C.F.R. §2510.3-1(j).  To qualify for this "safe harbor" exception, four elements must be satisfied:

> (1) No contributions are made by an employer or employee organization;
> (2) Participation [in] the program is completely voluntary for employees . . . ;
> (3) The sole functions of the employer . . . with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer . . . receives no consideration in the form of cash or otherwise in connection with the program . . . .

*Butero*, 174 F.3d at 1213 (citing 29 C.F.R. §2510.3-1(j)).  The court will analyze the Sara Lee insurance plans under this framework to determine if the "safe harbor" exception applies.

In regard to the Group Plan, the evidence shows that Sara Lee covers the entire monthly payment for the basic coverage, with employees responsible for additional premiums for elected

optional features.  *Defendant's Exh. 1*, Doc. 16, ¶4.  Considering this evidence,[5] the Group Plan

does not qualify for the "safe harbor" exception, having failed the first prong requiring that

employers make no contributions to the plan.

In regard to the Disability Plan, while there is no dispute that Sara Lee makes no

contributions for that plan, that participation in the plan is voluntary, and that Sara Lee receives

no consideration in connection with the plan, the third element - whether Sara Lee has endorsed

the plan or not - is disputed.  Sara Lee argues that the totality of the circumstances indicate that it

endorsed the Disability Plan issued by Aetna.  The Plaintiff argues that no endorsement

occurred.

In determining the scope of this endorsement element, the Eleventh Circuit has stated that

"[t]he regulation explicitly obliges the employer who seeks safe harbor to refrain from *any*

functions other than permitting the insurer to publicize the program and collecting premiums."

*Butero*, 174 F.3d at 1213 (emphasis supplied).  Moreover, the Eleventh Circuit has also relied on

an Opinion Letter issued by the Department of Labor, stating that "[a]n endorsement within the

meaning of [§] 2510.3-1(j) occurs if the employee organization urges or encourages member

participation in the program or engages in activities that would lead a member reasonably to

conclude that the program is part of a benefit arrangement established or maintained by the

employee organization."[6]  *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1267 (11th Cir.

---

[5] Although the Plaintiff indicates he has "doubts and uncertainties" regarding the veracity
of the affidavit evidence, the Plaintiff presents no evidence explaining why he doubts the
Plaintiff's evidence.  Without any contrary evidence, the court accepts the Defendants' evidence
and simply notes the Plaintiff's skepticism.

[6] The court recognizes that the language of the Opinion Letter specifically refers to an
"employee organization," not an "employer."  Reading the letter as a whole, however, the court

2006) (emphasis omitted) (citing ERISA Op. Letter No. 94-26A, 1994 WL 369282 (July 11, 1994)).  It should also be noted that this court previously has noted that the issue of endorsement is "evaluated from the point of view of a reasonable employee."  *Stoudemire v. Provident Life and Accident Ins. Co.*, 24 F. Supp. 2d 1252, 1256-57 (M.D. Ala. 1998) (citing *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429 436-37 (6th Cir. 1996)).

Following the framework set forth in *Butero* and *Moorman*, the court finds that the Sara Lee did endorse the Disability Plan so that it is not eligible for the "safe harbor" exception. First, the affidavit of Mark Jacob, the Vice President of Global Benefits for Sara Lee, explicitly states that "Sara Lee selected the [Disability] Plan, markets the Plan to its employees as the 'Sara Lee Corporation Long-Term Disability Plan,' advises the employees as to their eligibility under the Plan and administers the Plan."  *Defendant's Exh. 1*, Doc. 16-1, ¶5.  Beyond this mere assertion, the Defendants also present documentary evidence.  For instance, in the Summary of Coverage for the Long-Term Disability Plan, it is noted that the Plan Administrator is the Sara Lee Benefits Administrative Committee.  This Summary of Coverage also recognizes that Sara Lee intends to continue the Plan indefinitely but reserves the right to amend, modify or terminate the Plan or any part of the Plan at any time.  *Defendant's Exh. 1*, *Attachment A*, Doc. 16., p. 13. Considering this evidence in light of *Butero*, Sara Lee engages in actions well beyond either allowing the insurer to publicize the Plan or merely collecting premiums.  Furthermore, in light of *Moorman* and the Department of Labor's definition of endorsement, these activities could

---

is convinced that the Department of Labor specifically used the "employee organization" language because the party requesting the opinion was an employee organization, not because there is a different standard between "employee organizations" and "employers." Accordingly, the court finds that this Opinion Letter provides persuasive support on the issue at hand, despite the specific reference to an "employee organization."

lead an employee to reasonably conclude that the Disability Plan is part of a benefit arrangement established or maintained by the employer.

Other cases also provide persuasive support for the finding that Sara Lee endorses the Disability Plan.  Another judge in this district has determined that "a finding of endorsement may be proper where the employer is named as the plan administrator and 'where the employer provides a summary plan description that specifically refers to ERISA in laying out the employees' rights under the policy or explicitly states that the plan is governed by ERISA." *Anderson v. UnumProvident Corp.*, 322 F. Supp. 2d 1272, 1278 (M.D. Ala. 2002) (De Ment, J.).  In the present case, as noted above, the Sara Lee Benefits Administrative Committee is the Plan Administrator for the Disability Plan.  Furthermore, the Summary of Coverage for the Disability Plan specifically refers to the employees' rights under ERISA and the steps that should be taken to enforce such rights.  *Defendant's Exh. 1*, *Attachment A*, Doc. 16., p. 14.

The Plaintiff attempts to counter the aforementioned evidence with evidence of his own, arguing that a reasonable employee could conclude that the Disability Plan was established and maintained by Aetna, not Sara Lee.  The Plaintiff's evidence, however, is unpersuasive.  First, the Plaintiff presents a document entitled  "Social Security Benefits Assistance from Aetna Life Insurance Company."  *Plaintiff's Exh. 1*, Doc. 17-2.  There is no indication anywhere in this document, however, that Aetna administers or maintains the Sara Lee Disability Plan.  In fact, this document only provides information about how to apply for Social Security disability income.  Accordingly, the court does not follow the Plaintiff's argument that this document demonstrates to a reasonable employee that Aetna either administers or maintains the Sara Lee Disability Plan.  Second, the Plaintiff points out that, in the discussion of ERISA rights in the

Summary of Coverage, there is the statement that "[i]f you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court." *Plaintiff's Exh. 3*, Doc. 17-4.  This statement, however, does not affect the endorsement determination. Moreover, the indication that suit can be filed in either state or federal court does not preclude the removal of claims filed in state court to federal court.  In sum, the Plaintiff's evidence simply does not adequately support a determination that Sara Lee does not endorse the Disability Plan.

Considering the totality of the evidence presented by both parties in light of the *Butero* and *Moorman* precedent, as well as other persuasive support, the court finds that the Disability Plan does not qualify for the "safe harbor" exception set forth by the Department of Labor under 29 C.F.R. §2510.3-1(j).  Accordingly, because both plans fall under the definition of an "employee benefit welfare plan" under ERISA and both plans fail to qualify for the "safe harbor" exception, this court has original jurisdiction over Counts Four, Five and Six, thereby rendering the Defendants' removal of these claims appropriate.  The Plaintiff's Motion to Remand in regard to Counts Four, Five and Six, therefore, is due to be DENIED.

## II. *The Negligence Claim* [7]

Unlike Counts Four, Five and Six, Count Three, the negligence claim against Defendant Elmore, based on the alleged failure to provide a safe working environment, does not fall under ERISA's "complete preemption" because it is not an ERISA claim.  Because Counts Four, Five and Six present a federal question making removal appropriate for those claims, however, the court still must determine whether, applying supplemental jurisdiction, Count Three should also

---

[7] For ease of discussion, the court refers to the Count Three claim as "the negligence claim."  This classification does not disregard the alleged issue of wantonness, instead it simply serves as a term for reference.

remain in federal court.

Congress has granted federal courts supplemental jurisdiction, stating:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. §1367(a).  This section of the statute defines the permissible boundaries for the exercise of supplemental jurisdiction.

The Eleventh Circuit has stated that "[i]n deciding whether a state law claim is part of the same case or controversy as a federal issue, we look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence."  *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996), *cert. denied*, 519 U.S. 1149 (1997). In the present case, the Plaintiff's negligence claim does not involve the same facts, occurrences, witnesses or evidence as the ERISA claims.  In fact, these claims are related only tangentially, at best.

The Count Three claim revolves around whether Defendant Elmore negligently or wantonly supervised the Plaintiff by allegedly ordering him to disregard a safety feature while performing his work.  Presumably, the witnesses and evidence to prove this claim will focus on whether this order to ignore safety features occurred, whether Defendant Elmore acted negligently in giving this order, and whether the Plaintiff suffered damages as a result of Defendant Elmore's alleged negligence.  In contrast, the ERISA claims involve the Sara Lee insurance plans and whether there is an actionable claim for breach of contract, fraud, or failure to pay disability benefits under these insurance plans.  The evidence to prove these claims will focus on the plans and what sort of disability benefits they are required to provide under certain

12

circumstances.  The issue of Defendant Elmore's alleged negligence has no bearing on the

ERISA claims, and the issue of whether disability benefits were withheld wrongfully has no

bearing on whether Defendant Elmore's alleged negligence caused the Plaintiff's injuries.

In essence, the only thing that these claims have in common is that they relate to the

Plaintiff's injuries in some manner.  The claims deviate quickly, however, as the negligence

claim focuses on the cause of the injury while the ERISA claims focus on benefits allegedly due

to the Plaintiff based on a disability stemming from the Plaintiff's injuries.  Simply stated, the

bases for these claims are too attenuated to be considered part of the same case or controversy.

Accordingly, the negligence claim is not "so related" to the ERISA claims that it forms part of

the same case or controversy, as is required for supplemental jurisdiction under 28 U.S.C.

§1367(a).

Other courts have reached the same decision in cases involving the "so related"

requirement for supplemental jurisdiction.  *See Hudson*, 90 F.3d at 455-56 (holding that a state

law breach of contract claim for non-ERISA-based retiree privileges was not part of the same

case and controversy as ERISA claims providing original jurisdiction for the action); *Walters v.*

*City of Andalusia*, 89 F. Supp. 2d 1266, 1286-87 (M.D. Ala. 2000) (holding that state law claims

for conversion and intentional interference with economic relations were not part of the same

case or controversy as a Section 1983 claim for unreasonable seizure because the facts and

circumstances underlying the state law claims are distinct from the facts and circumstances

underlying the Section 1983 claim); *Roberts v. Lakeview Cmty. Hosp.*, 985 F. Supp. 1351, 1351-

52 (M.D. Ala. 1997) (holding that an assault and battery claim against another employee was not

part of the same case or controversy as a Title VII claim for gender discrimination against an

employer, even if the employer's reaction to the act leading to the assault and battery claim was the basis for the Title VII claim).

Because the negligence claim is not "so related" to the ERISA claims that they form part of the same case or controversy, the court cannot exercise supplemental jurisdiction over the negligence claim.  Accordingly, in regard to the Count Three negligence claim against Defendant Elmore, the Defendants' Motion to Remand is due to be GRANTED.

### III. *The Workers' Compensation Claims*

28 U.S.C. §1445(c) states that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."  Both claims set forth in Count One and Count Two fall under Alabama workers' compensation laws.  *See* ALA. CODE § 25-5-31 (providing a cause of action to recover for personal injury or death by an accident arising out of and in the course of employment); ALA. CODE § 25-5-11.1 (providing a cause of action for unlawful termination of employees solely because the employee has instituted an action against the employer to recover workers' compensation benefits); *see also Brooks v. Wireless One, Inc.*, 42 F. Supp. 2d 1294, 1296 n.3 (M.D. Ala. 1999) (providing a survey of cases in the Middle and Southern Districts of Alabama where the courts have found that claims for retaliatory discharge brought pursuant to ALA. CODE §25-5-11.1 arise under workers' compensation laws and may not be removed).  Accordingly, the Court One and Count Two claims in the present case may not be removed to this court.  The Defendants concede as much. *Defendants' Opposition to Plaintiff's Motion to Remand*, Doc. 16-1, pp. 13-14.  Therefore, in regard to Count One and Count Two, the Plaintiff's Motion to Remand is due to be GRANTED.

14

## V.  **CONCLUSION**

For the reasons discussed, it is hereby ORDERED as follows:

(1) In regard to Counts Four, Five and Six, the Plaintiff's Motion to Remand is DENIED.

(2) In regard to Counts One, Two and Three, these Counts are SEVERED, the Plaintiff's Motion to Remand is GRANTED as to them, and these claims are REMANDED to the Circuit Court of Houston County.  The clerk is DIRECTED to take all steps necessary to effectuate the remand.

(3) Since the state law claims alleged in Counts Four, Five and Six are completely preempted by ERISA, the Plaintiff is given until June 28, 2007 to file an Amended Complaint asserting an ERISA claim, if he wishes to do so.  Any such Amended Complaint should be complete unto itself, with no reference to the original Complaint.  Failure to file such an Amended Complaint will result in this case being dismissed with prejudice.


DONE this 22nd day of June, 2007.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

15